**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JOHN N. JONCHUCK, JR.,

Plaintiff,

v. Case No. 3:24-cv-120-WWB-LLL

NARJEM[1] and HARRIS,

Defendants.
_____________________________/

# ORDER

On September 1, 2026, the Court dismissed this case because Plaintiff, a pro se inmate, did not timely respond to Defendants' Motion for Summary Judgment or the Court's Order to Show Cause. (*See* Doc. 82). However, on September 14, 2026, the Court received Plaintiff's responses, both of which he submitted to prison officials for mailing on the date by which he was to comply with the Order to Show Cause, August 17, 2026. (*See* Doc. Nos. 84, 85). Because Plaintiff timely complied with the Order to Show Cause, the Court will vacate its dismissal Order (Doc. 82). However, upon review of Defendants' Motion for Summary Judgment (Doc. 77) and Plaintiff's pro se Response (Doc. 85), the Court concludes Defendants' Motion should be granted.

## I. ALLEGATIONS & ARGUMENTS

In his Amended Complaint (Doc. 15), Plaintiff alleges that, on October 25, 2022, Defendants Najem and Harris (both nurses), along with officers, tortured him for forty-five

[1] This Defendant's name is misspelled on the docket. The correct spelling is "Najem."

minutes to an hour inside the medical exam room at Suwannee Correctional Institution ("**SCI**"), where he was undergoing an intake assessment following treatment he received at an outside hospital. (*See* Doc. 15 at 10).[2] Plaintiff alleges the following occurred inside the medical exam room: Defendant Najem grabbed him so tightly that his shoulders were bruised; bent him backwards, causing immense pain such that he "screamed and wailed"; slammed him into a plastic chair; and "water bo[arded]" him using urine, in an attempt to suffocate and drown him and causing him to lose consciousness. (*Id.* at 11). He further alleges that someone placed a noose around his neck during the water boarding, Defendants Najem and Harris (and others) struck him with "closed fists and kicks," and Defendant Harris "stuck diabetic needles in [his] face." (*Id.*).

In their Motion, Defendants argue video footage and other records show that Defendant Harris was not present for the medical evaluation and never interacted with Plaintiff on October 25, 2022, and Plaintiff was inside the medical exam room for only about six minutes, after which he showed no visible signs of having endured the "torture" of which he complains. (*See* Doc. 77 at 4–5).

In his pro se Response, Plaintiff concedes that his claim against Defendant Harris should be dismissed because he named the wrong person. (*See* Doc. 85 at 1). As such, the Court will address solely the claim against Defendant Najem. Plaintiff argues that claim should proceed based on the allegations in his Amended Complaint, but he also claims that Defendant Najem "forcefully [struck him] in the chest ripping off [his] Holter

---

[2] On October 25, 2022—the day of the alleged incident—Plaintiff was assaulted by other inmates in a holding cell at the Reception and Medical Center ("**RMC**"), where he was temporarily housed to attend a scheduled cardiology appointment. (*See* Doc. 77 at 3–4; *see also generally* Doc. Nos. 77-7, 77-10, 77-16).

heart monitor," and after he lost consciousness (from the alleged water boarding), he woke up to "getting punched and kicked and thrown into a wall" and later discovered he had defecated himself. (*Id.* at 2–4). The allegations not contained in the Amended Complaint will not be considered in ruling on Defendants' Motion for Summary Judgment because "[a] plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment." *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) … requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The

nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

## III. DISCUSSION

Defendant Najem offers his own declaration in which he expressly denies having engaged in the conduct Plaintiff describes. (*See generally* Doc. 77-9). He also denies having witnessed anyone physically assaulting or battering Plaintiff. (*Id.*). The video footage does not show the inside of the medical exam room where Defendant Najem evaluated Plaintiff. (*See* Doc. 79 (H Dorm Vestibule #229)).[3] However, the footage indisputably contradicts Plaintiff's assertion that he was tortured inside the exam room for forty-five minutes to one hour because he was inside the room for only six minutes. (*See generally id.*). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The video footage also shows that Plaintiff physically appears the same exiting the medical exam room as he did when he entered: in no apparent distress; walking on his own; and apparently dry. (*See* Doc. 79 (H Dorm Vestibule #229; H Dorm Main Entrance

[3] Defendants provided two videos. The first video shows the main entrance to Plaintiff's dorm, where he is returned after the medical exam. (*See* Doc. 79 (H Dorm Main Entrance #105-11)). The second video shows the area just outside the medical exam room. (*See id.* (H Dorm Vestibule #229)).

#105-11)). Moreover, other officers were in the area outside the medical exam room when Plaintiff was being evaluated, and no officer or staff member appears to have been alarmed by sounds of "torture" (such as screaming and wailing) coming from inside the room.[4] (*See id.* (H Dorm Vestibule #229)). The atmosphere appeared calm and routine. (*Id.*).

Other evidence further undermines Plaintiff's allegations, specifically regarding his claimed injuries. In his Amended Complaint, Plaintiff asserts the SCI exam-room incident caused bruising to his shoulders; neck and back pain; facial paralysis; hernias; and mental and emotional distress. (See Doc. 15 at 11, 13).[5] But there is no evidence of Plaintiff having sustained any injuries on October 25, 2022, other than those from the inmate assault at RMC. From that assault, Plaintiff sustained bruising under both eyes, an abrasion to the forehead, bruising to the forehead and cheek, an abrasion on his cheek, and bruising to both ears. (*See* Doc. 77-5 at 2, 7; *see also* Doc. 77-6 at 1). Those injuries were serious enough to warrant CT scans. (*See generally* Doc. 77-7; *see also* Doc. 77-5 at 4). Plaintiff had a cardiology consult the day after the alleged exam-room incident, and the provider noted Plaintiff had "bruises and swelling to [his] face," consistent with the injuries he sustained from the inmate assault. (*See* Doc. 77-12 at 1).

---

[4] The door to the exam room was open much of the time. Plaintiff enters the exam room at about the forty-second mark; the door closes at about the two-minute-fifty-four second mark; the door opens at about the five-minute-fifty-seven second mark; and Plaintiff exits at about the seven-minute mark. (*See generally* Doc. 79 (H Dorm Vestibule #229)).

[5] In his Response, Plaintiff complains of other injuries, including bruising to his groin and thighs and knots on his head. (*See* Doc. 85 at 4). These allegations will not be considered because they are not contained in the Amended Complaint.

Plaintiff was transferred to Wakulla Correctional Institution ("**WCI**") on about October 31, 2022, and there, he reported that medical and security staff at SCI assaulted him, prompting an investigation by the Office of the Inspector General ("**OIG**"). (*See* Doc. 77-10 at 3; *see also* Doc. 77-16 at 1).[6] When Plaintiff was physically evaluated at WCI, he reported that his injuries were caused by staff at SCI during the alleged exam-room incident. (*See* Doc. 77-16 at 1–2). However, the injuries noted were "bilateral bruising around the eyes, a bruise to the left chest, and bruising to his right-side rib area." (*Id.* at 2–3). He also had small scrapes behind his ears. (*Id.* at 3). There was no documented injury to Plaintiff's shoulders, and no mention of facial paralysis, hernias, or neck and back pain. (*See id.* at 1–3).

Although there is no video footage showing what occurred inside the medical exam room, the evidence supporting Defendants' Motion for Summary Judgment undermines Plaintiff's assertion that he was tortured. With his Response, the only evidence Plaintiff offers are pictures of the injuries he purportedly sustained from Defendant Najem's actions (bruising and cuts below his right ear, and a bruise on his right shoulder). (*See* Doc. 85-1 at 3–4).[7] The ear bruise is a documented injury caused by the inmate assault at RMC. (*See* Doc. 77-5 at 2, 7; *see also* Doc. 77-6 at 1). Although there was no documentation of shoulder bruising caused by the RMC assault, Plaintiff provides no

[6] All security and medical staff who were working in H dorm at the relevant time were interviewed and denied having participated in or witnessed any physical abuse against Plaintiff during his medical exam. (*See* Doc. 77-10 at 8–10). The OIG also noted that a review of the video evidence showed "no indication that [Plaintiff] was physically battered or abused by staff at SCI." (*Id.* at 10).

[7] These appear to be some of the pictures taken during the exam at WCI. (*See* Doc. 77-16 at 4–12).

evidence substantiating that he indeed had shoulder bruising or that Defendant Najem tortured him, and "at the summary judgment stage, [he] must do more than simply show that there is some metaphysical doubt as to the material facts." *See Scott*, 550 U.S. at 380. At this stage, Plaintiff may no longer rely on the unsubstantiated allegations in his unsworn Amended Complaint, and he does not "adduce specific evidence from which a jury could reasonably find in his favor."[8] *See Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013). A "scintilla of evidence" in support of a response to a summary judgment motion is insufficient. *Id.* Here, "the record taken as a whole could not lead a rational trier of fact to find for [Plaintiff]." *See Scott*, 550 U.S. at 380. As such, Defendant Najem is entitled to summary judgment.

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Court's Order dismissing this case (Doc. 82) is **VACATED**.
2. Defendants' Motion for Summary Judgment (Doc. 77) is **GRANTED**.
3. The **Clerk** is directed to enter judgment in favor of Defendants and terminate any pending motions as moot. This case remains closed.

**DONE AND ORDERED** in Jacksonville, Florida, on October 1, 2026.

---

[8] The Court-approved Complaint form that Plaintiff completed and signed includes a Rule 11 certification, but his Amended Complaint is not verified or sworn to under penalty of perjury through a statement substantially like, "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." *See* 28 U.S.C. § 1746(2) (allowing for the use of unsworn verifications if the individual declares that the statements at issue are true and correct under penalty of perjury). "[A] Rule 11 certification is not a substitute for an affidavit or for a declaration under penalty of perjury under 28 U.S.C. § 1746." *Jaye v. United States*, No. 2:22-cv-376, 2022 WL 2317226, at *1 n.1 (M.D. Ala. June 28, 2022); *see also Renfroe v. Nationstar Mortg., LLC*, No. 3:20-cv-191-J, 2020 WL 1046825, at *2 (M.D. Fla. Mar. 4, 2020) (refusing to consider a Rule 11 certification as a substitute for a sworn statement made under penalty of perjury in considering a motion for a temporary restraining order under Rule 65(b)(1), which requires the movant to rely on "specific facts in an affidavit or a verified complaint").

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Jax-6
c: John N. Jonchuck, Jr.
Counsel of Record